# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANWESHA MAJUMDER, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-23-2492 |
| STATE OF MARYLAND HEALTH | * | |
| COST SERVS. REV. COMM'N | | |
| | * | |
| *Defendant*. | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

In this civil rights action, Plaintiff Anwesha Majumder ("Plaintiff" or "Majumder") raises claims of retaliation under the Maryland Fair Employment Practices Act ("MFEPA"), MD. CODE, STATE GOV'T § 20-606 (Count I) and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e (Count II) against her former employer Defendant State of Maryland Health Services Cost Review Commission[1] ("Defendant" or the "HSCRC"). (ECF No. 2.)[2] Specifically, Majumder claims that her former employer terminated her on October 19, 2022 after she complained to her supervisor on August 1, 2022 and again during

---

[1] Plaintiff asserts her claims against Defendant "State of Maryland Health Services Cost Review Commission." (ECF No. 2.) HSCRC is a Maryland independent agency established by the General Assembly to regulate the rates charged by hospitals and other related institutions. *See Health Svcs. Cost Rev. Comm'n v. Franklin Square Hosp.*, 372 A.2d 1051, 1052 (Md. 1977). While Defendant HSCRC correctly notes that, as a State agency, it is treated as if it was the State for immunity purposes, *Balt. Police Dep't v. Cherkes*, 780 A.2d 410, 424 (Md. App. 2001), Defendant also argues that Plaintiff's Complaint "improperly name[s] the State Department of Health and the HSCRC." (ECF No. 8-2 at 16.) While Plaintiff could have captioned her Complaint more clearly by naming either the "State of Maryland" *or* "HSCRC," this Court understands Plaintiff's Complaint to be brought against HSCRC.

[2] For clarity, this Memorandum Order cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Order cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

an all staff meeting on August 12, 2022 about an external guest speaker's use of the term "negro" during a July 28, 2022 presentation.  (*Id.* ¶¶ 11–16.)

Presently pending before this Court is the Defendant's Motion to Dismiss or Motion for Summary Judgment (ECF No. 8).  Plaintiff responded (ECF No. 9), and Defendant replied (ECF No. 10).  The parties' submissions have been reviewed and no hearing is necessary.  Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, the Defendant's Motion to Dismiss or Motion for Summary Judgment (ECF No. 8), construed as a motion to dismiss, shall be GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.  At bottom, Majumder has not sufficiently alleged that she engaged in a protected activity, and even if Majumder did engage in a protected activity, her retaliation claims would still fail because she has failed to plausibly allege a causal link between the protected activity and the adverse action.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 2), and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 8).

Plaintiff Anwesha Majumder was briefly employed by Defendant HSCRC as "Chief 1, Population Health" from March 2, 2022 to October 19, 2022.  (ECF No. 2 ¶¶ 5, 8.)  Attached to Defendant's Motion is Anwesha Majumder's employment contract, which provided that Majumder was "employed as a contractual employee pursuant to the State Personnel and

Pensions Article ('SPP'), Title 13 of the Annotated Code of Maryland."  (ECF No. 8-4 at 1.)
The contract further provided it was for "at-will" employment, meaning either party could
terminate the contract at any time.  (*Id.* at 4.)

Majumder alleges that "[i]n the wake of the homicide of George Floyd,[3] [Defendant]
started a program to provide mentorship for people from underrepresented backgrounds."
(ECF No. 2 ¶ 10.)  During one such mentorship meeting on July 28, 2022, a white female
guest speaker "used the word 'Negro' to describe African American persons."  (*Id.* ¶ 11.)
Plaintiff did not attend the meeting, but asserts that she "believed the language used was
offensive and discriminatory to African Americans."  (*Id.*)  Plaintiff alleges that two of her
colleagues informed her of the language used at the meeting and indicated that they
"considered the word 'Negro' a racial slur and believed the language was offensive and
discriminatory to African Americans."  (*Id.* ¶ 12.)  Plaintiff alleges that she encouraged her
colleagues to contact leadership.  (*Id.*)

After Majumder's colleagues reported the incident to the event's organizer, (*id.* ¶ 13),
Plaintiff alleges that she raised the issue to her supervisor on August 1, 2022.  (*Id.* ¶ 14.)  She
alleges that her supervisor stated that he was not aware of the incident but indicated that he
would raise the issue with leadership and that it would be addressed during an August 12, 2022
all staff meeting.  (*Id.*)

---

[3] On May 25, 2020, George Floyd, a Black American, died after Minneapolis police officer Derek Chauvin
kneeled on his neck for nearly ten minutes.  Mr. Floyd was unarmed and cried for help as the officer suffocated
him to death.  A witness's video showing the encounter quickly circulated online, resulting in masses of people
pouring into the streets across the United States to express their outrage of the police killing of Mr. Floyd and
other Black Americans.  *See Tinius v. Choi*, 77 F.4th 691, 695–96 (D.C. Cir. 2023); *Index Newspapers LLC v. United
States Marshals Serv.*, 977 F.3d 817, 821 (9th Cir. 2020); *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 229 (S.D.
Ohio).

Plaintiff asserts that her supervisor did not address the guest speaker's comments during the August 12, 2022 all staff meeting, prompting Majumder to raise the issue. (*Id.* ¶ 15.) Specifically, she alleges that she "complained that leadership did not immediately respond to the matter and asked what affirmative steps the [Defendant] intended to take[.]" (*Id.*) According to Plaintiff, leadership was "displeased" that she raised the issue. (*Id.* ¶ 16.) She alleges that one manager "screamed at [her]" and another "challenged whether the use of the term 'Negro' was . . . offensive and opined that [Plaintiff] was 'overreacting.'" (*Id.*)

Plaintiff alleges that she continued to perform her job satisfactorily. (*Id.* ¶ 17.) She contends that after her comments during the August 12, 2022 all staff meeting, her "supervisors began threatening and yelling at [her] for opposing discriminatory language[] and threatened to terminate her." (*Id.* ¶ 18.) She claims that she was fired on October 19, 2022 "without any reasonable explanation." (*Id.* ¶ 19; *see also* ECF No. 8-9)

On November 11, 2022, Plaintiff filed charges with the Maryland Commission on Civil Rights and the United States Equal Employment Opportunity Commission ("EEOC"). (ECF No. 2 ¶ 7.) The EEOC declined to proceed with her claim and therefore issued her a right to sue letter on June 21, 2023. (*Id.*)

And so, on August 29, 2023, Plaintiff initiated the instant lawsuit, filing a two-count complaint in the Circuit Court for Baltimore City raising claims of retaliation under MFEPA and Title VII against her former employer. (ECF No. 2.) On September 13, 2023, Defendant removed this action to this Court based on diversity jurisdiction and federal question jurisdiction. (ECF No. 1.) On September 29, 2023, Defendant moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for

summary judgment under Federal Rule of Civil Procedure 56.  (ECF No. 8.)  The matter has

been fully briefed (ECF Nos. 9, 10) and is ripe for review.

## STANDARD OF REVIEW

Defendant's Motion (ECF No. 8) is styled as a motion to dismiss under Federal Rule

of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Federal Rule

of Civil Procedure 56.  When a party submits a motion that is one to dismiss or alternatively

for summary judgment, the court has discretion to determine which standard is implicated in

deciding the motion.  *Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431,

436–37 (D. Md. 2011).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain

a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED.

R. CIV. P 8(a)(2).  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and

not to resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations

omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to

"state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009)

(quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard,

a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the

elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*,

716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set

forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

This Court will construe Defendant's Motion (ECF No. 8) as a motion to dismiss. *Cf. Rohan v. Networks Presentation, LLC.*, 175 F. Supp. 2d 806, 809 (D. Md. 2001) (converting a motion to dismiss to a motion for summary judgment only after determining it necessary to consider extrinsic documents). When ruling on a motion to dismiss, a court may only "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Sec'y of State for Def. v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citing *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 86 (E.D. Va. 2007)). In support of its Motion to Dismiss or for Summary Judgment (ECF No. 8), Defendant submitted the declaration of Plaintiff's supervisor Geoff Doughtery ("Doughtery") (ECF No. 8-3), as well as six exhibits consisting of Plaintiff's employment contract with Defendant (ECF No. 8-4); an August 15, 2022 email from HSCRC's Executive Director Katie Wunderlich with the subject "[HSCRC All-Staff Email]

Message to Staff" (ECF No. 8-5); an August 3, 2022 email thread between HSCRC personnel and the external guest speaker with the subject "Feedback on presentation" (ECF No. 8-6); an August 30, 2022 email with the subject "HSCRC Word Usage in a DEI Training" between Office of Equal Employment Programs for the Maryland Department of Health personnel (ECF No. 8-7); a text thread between Plaintiff and Doughtery (ECF No. 8-8); and the October 19, 2022 letter terminating Plaintiff's employment signed by Doughtery (ECF No. 8-9). While the affidavit (ECF No. 8-3) and several of these exhibits (ECF Nos. 8-5, 8-6, 8-7, 8-8) simply provide context to the circumstances surrounding Plaintiff's termination and do not "give rise to the legal rights asserted," *Chesapeake Bay Found., Inc.*, 794 F. Supp. 2d at 611, this Court may consider Plaintiff's employment contract with HSCRC (ECF No. 8-4) and termination letter (ECF No. 8-9) without converting Defendant's motion to a motion for summary judgment.

## ANALYSIS

Through her Complaint, Majumder asserts two counts of retaliation in violation of MFEPA (Count I) and Title VII (Count II). Defendant seeks dismissal of both counts. Because MFEPA is the state analogue of Title VII, Maryland courts "traditionally seek guidance from federal cases in interpreting [MFEPA]." *Haas v. Lockheed Martin Corp.*, 914 A.3d 735, 742 (Md. 2007). Thus, this Court frequently applies Title VII caselaw to adjudicate MFEPA and Title VII claims together. Accordingly, this Court will address Majumder's retaliation claims, Counts I and II, together.

Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C.

§ 2000e-3(a). The elements of a retaliation claim are: "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).

Majumder has not plausibly alleged that she was engaged in a protected activity. Her entire claim is based upon one external guest speaker's use of an offensive term during a July 2022 presentation that Majumder did not even attend. The United States Court of Appeals for the Fourth Circuit "has recognized, consistent with the express language of section 2000e-3(a), that an employer may not retaliate against an individual either for 'opposing discriminatory practices in the workplace' or for 'participating in an ongoing investigation or proceeding under Title VII.'" *McNair v. Computer Data Sys., Inc.*, No. 98-1110, 1999 U.S. App. LEXIS 1017, at *13–14 (4th Cir. Jan. 26, 1999) (quoting *Laughlin v. Metropolitan Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). Only one of these categories—opposition—is relevant here. The Fourth Circuit has "articulated an expansive view of what constitutes oppositional conduct, recognizing that it encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (internal quotation marks omitted). Employment practices made unlawful by Title VII are those that discriminate against employees on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2.

Majumder contends that her complaints to her supervisor on August 1, 2022 and during the all staff meeting on August 12, 2022 about the external guest speaker's use of the

term "negro" are protected activity.  This argument is unavailing.  While the Fourth Circuit has made clear that the term "unlawful employment practice" should be interpreted broadly such that it encompasses "not only employment actions actually unlawful under Title VII but also employment actions [the employee] reasonably believes to be unlawful," that broad interpretation is "not without limits."  *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 719 (4th Cir. 2024).  "[O]nly when an employee has an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress is the employee's [opposition] conduct protected."  *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 412 (4th Cir. 2022) (cleaned up).  Plaintiff describes the non-recurring guest speaker's use of the term "negro" as "offensive, humiliating, and discriminatory," (ECF No. 9 at 1), but she has not alleged that she opposed "employment actions actually unlawful under Title VII" or "employment actions [she] reasonably believe[d] to be unlawful" under Title VII, despite her assertions to the contrary.  *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). In other words, Majumder has not opposed an unlawful employment action taken by HSCRC. Rather, she takes issue with an external guest speaker's use of an offensive term on one occasion.  She does not allege that HSCRC invited the guest speaker back, and while her Complaint suggests that her employers did nothing to remedy the situation, there is simply no basis to contend that this isolated incident resulted in a continuing ongoing employment activity by HSCRC that violated Title VII.

Furthermore, even if Plaintiff did engage in a protected activity with respect to one comment on one occasion by a guest speaker, her retaliation claims would still fail because she fails to plausibly allege a causal link between the protected activity and the adverse action.

Majumder must demonstrate a "but-for" connection between her activity and the adverse employment action. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). Plaintiff may achieve this through providing evidence of temporal proximity, or "the existence of other facts that alone, or in addition to temporal proximity, suggests that the adverse employment action occurred because of the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021); *see also Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the alleged temporal proximity must be "very close" (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248 (10th Cir. 2001)). A two-month time gap, such as the one alleged by Majumder from August 2022 to October 2022, has previously been rejected by the Fourth Circuit. *See Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) ("[T]his court has previously noted that a lapse of two months between the protected activity and the adverse action is 'sufficiently long so as to weaken significantly the inference of causation.'" (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003))). While Plaintiff contends that after her comments during the August 12, 2022 all staff meeting, her supervisors began threatening and yelling at her and threatened to terminate her, she fails to allege sufficient facts to support her theory of causation. Plaintiff has therefore failed to state a plausible claim for retaliation.

Accordingly, Defendant's Motion to Dismiss (ECF No. 8) is GRANTED. Because this Court finds that Plaintiff cannot cure the defects in her Complaint by mere amendment, *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015) (explaining that where an error resulting in dismissal cannot be cured by amendment, dismissal should be with prejudice), Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE and

without affording Plaintiff an opportunity to amend.

## CONCLUSION

For the reasons stated above, it is this 1st day of May, 2024, hereby ORDERED that:

(1) Defendant's Motion to Dismiss or Motion for Summary Judgment (ECF No. 8), construed as a motion to dismiss, is GRANTED;

(2) Plaintiff's Complaint (ECF No. 2) is DISMISSED WITH PREJUDICE; and

(3) The Clerk of Court shall CLOSE this case.

_____/s/_____

Richard D. Bennett
United States Senior District Judge

11